**In the Matter of Mark MILBANK, d/b/a the Furniture Craftsman, Bankrupt.**

**Bankruptcy No. 78 B 1849.**

United States Bankruptcy Court,
S. D. New York.

Nov. 2, 1979.

Schulman & Abarbanel, New York City, for Ann C. Milbank.

Ruben, Schwartz, Lasker & Schnall, New York City, for Mark Milbank.

DECISION ON COMPLAINTS OF ANN C. MILBANK and HOWARD SCHULMAN TO HAVE DEBTS DUE THEM DECLARED NONDISCHARGEABLE.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Plaintiffs are father and daughter who seek a nondischargeable determination with respect to their claims against the bankrupt, who is the ex-son-in-law of plaintiff, Howard Schulman, and ex-husband of plaintiff, Ann C. Milbank. The essence of their complaints is that the bankrupt obtained money from the plaintiffs at a time when he was having an adulterous affair with his next door neighbor and that he thereafter ran off with her. Since both complaints are based upon the same allegations of fraud the following determination will cover both cases.

The parties appeared at the trial and submitted evidence resulting in the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. The bankrupt, Mark A. Milbank, filed his voluntary petition in bankruptcy with this court on October 13, 1978, and was thereupon adjudicated. He had been engaged in the business of designing and fabricating custom furniture in Port Chester, New York.

2. Plaintiff, Ann Milbank, was married to the bankrupt on August 20, 1966 and resides in Nassau County, New York. She has three children from this marriage.

3. Plaintiff, Howard Schulman, is the father of plaintiff Ann Milbank and is an attorney at law with offices in New York City. He is a member of the firm of Schulman & Abarbanel, attorneys for both plaintiffs with respect to these proceedings against the bankrupt.

4. During the Spring of 1977, plaintiff, Howard Schulman, learned from his daughter and his former son-in-law, the bankrupt, that their marital relationship was in trouble and that they were trying to put it together again. The bankrupt had moved out of his house and left his wife for a period of five months, commencing January, 1977.

5. In September, 1977, after the bankrupt returned to the marital home, he requested that the plaintiff, Howard Schulman, lend him the sum of $10,000 as a partial payment for the purchase of a building in Port Chester, New York where the bankrupt could conduct his custom-made furniture business. The plaintiff, Howard Schulman, then believed that the bankrupt's marital relationship with the plaintiff's daughter had stabilized; the bankrupt had talked about building another house for his family. Plaintiff, Howard Schulman, was given to understand that the acquisition of the Port Chester location would enable the bankrupt to obtain greater production and alleviate some of his business problems so that the bankrupt could spend more time with his wife and children.

6. Plaintiff, Howard Schulman, advised the bankrupt that the purchase of the Port Chester building was a bad business investment because of the unique nature of the building which impaired its resaleability. However, plaintiff, Howard Schulman, advised the bankrupt that he would make the loan in the interest of the family and his grandchildren. He advanced the money in the belief that the new business location would afford the bankrupt more time to spend with his family.

7. On September 27, 1977, plaintiff, Howard Schulman, paid to the seller's attorney as a down payment for the purchase of the building on behalf of the bankrupt the sum of $5,750. Thereafter, on November 15, 1977, plaintiff, Howard Schulman, advanced to the bankrupt an additional $4,250 which was used by the bankrupt to enable him to acquire the building in the name of the bankrupt's wholly owned corporation.

8. In August, 1977, the bankrupt requested his then wife, the plaintiff, Ann Milbank to advance to him $5000 for the purchase of a new Honda automobile to be used in connection with his business. Repayment was to be made from the funds received by the bankrupt in connection with a business project then pending. Plaintiff, Ann Milbank, said that the bankrupt requested this money as a showing of her faith in their marriage and in him.

9. The bank account from which the $5000 was taken was in the name of the plaintiff, Ann Milbank. She had formerly been a school teacher. Her salary went into this account. They lived on the bankrupt's earnings, although the bank account had been placed in their joint names until December, 1977 when the plaintiff, Ann Milbank, caused it to be put back into her name alone.

10. On or about November 11, 1977, the plaintiff, Ann Milbank, withdrew $7500 from her bank account which she advanced to the bankrupt at his request in connection with his acquisition of the building in Port Chester, New York.

11. During the period when the plaintiff, Howard Schulman, advanced $5750 to the bankrupt in September, 1977, and $4250 on November 15, 1977, and when the plaintiff, Ann Milbank, advanced $5000 to the bankrupt in August, 1977, and $7500 in November, 1977, the bankrupt admittedly maintained an adulterous relationship with the wife of his next door neighbor.

12. During this time the bankrupt and his neighbor's wife registered at various motels and admittedly engaged in sexual activities. In October, 1977, the bankrupt rented an apartment in Long Beach, New York where the consorting neighbor visited him and had sex.

13. In December, 1977, plaintiff, Ann Milbank, first learned of the bankrupt's extra-marital affair when the husband of the next door neighbor telephoned to inform her that the bankrupt was having an affair with the neighbor's wife.

14. In January, 1978, the bankrupt left home, abandoning the plaintiff, Ann Milbank.

15. On October 4, 1979, the New York State Supreme Court, Nassau County, entered a decision granting the plaintiff, Ann Milbank, a divorce based on adultery committed by the bankrupt and the neighbor's wife, with whom he is now living.

16. The bankrupt did not repay any portion of the funds borrowed from the plaintiffs, with the result that they seek to have their claims determined to be nondischargeable.

17. There was no proof that when the bankrupt borrowed the funds from the plaintiffs he did not intend to make repayment. Hence, the central issue is even if the bankrupt intended to repay the loans, did he obtain the money under false pretenses?

18. The bankrupt made the stability of his marriage an issue in August, 1977, when he advised his former wife, plaintiff Ann Milbank, that her response to his request for the $5000 loan for his purchase of a Honda automobile would be a reflection of her faith in their marriage.

19. Similarly the bankrupt's request for loans from his then father-in-law, plaintiff Howard Schulman, and the bankrupt's former wife, plaintiff Ann Milbank, were predicated on a joint effort by the bankrupt and his former wife to attempt to make their previously troubled marriage work. The bankrupt caused plaintiff, Howard Schulman, to believe that the acquisition of the Port Chester building would enable him to spend more time with his family. The plaintiff, Ann Milbank, advanced the sum of $7500 from her bank account at the bankrupt's request as an expression of faith in their marriage. Thus, the stability of the bankrupt's marriage was a material fact in inducing the loans.

20. Although the bankrupt accepted the funds which the plaintiffs advanced in reliance upon a faithful attempt by the bankrupt and his then wife to repair their marital difficulties, the bankrupt was then unfaithful.

21. During the period when the bankrupt accepted the loans from his then wife and father-in-law he was having an affair with the wife of his next door neighbor. Indeed, the bankrupt even went so far as to rent an apartment in Long Beach, New York where he continued his extra-marital affair until he finally abandoned his wife in January, 1978. Obviously, if the plaintiffs had been aware of the bankrupt's conduct they would not have made the loans. Surely, the bankrupt was aware of the fact that he could only obtain these advances under the pretense that he was making an effort to strengthen his marriage.

22. The bankrupt therefore pretended to his then wife and father-in-law that he was making a good faith effort to stabilize his marriage, when in fact, he was rendering it asunder. This false pretense was instrumental in obtaining the loans because the plaintiffs made the advances in reliance upon the bankrupt's express request for a display of faith, at a time when he was faithless.

## DISCUSSION

It does not follow that every family loan made concurrently with the commission of adulterous acts can be characterized as having been obtained as a result of fraud in the bankruptcy sense. In this case the bankrupt and his then wife had experienced previous marital difficulties. The bankrupt became restless; he felt he was cut out for better things, notwithstanding his marriage of over ten years which resulted in three children, one of whom was adopted. In January of 1977, he abandoned his wife and family for approximately five months. The bankrupt thereafter returned to his marital home in the Spring of 1977, with the hope of stabilizing his marriage; both husband and wife consulted marriage counselors in this effort. They intended to make a good faith effort to strengthen their marriage.

The plaintiffs, who are the bankrupt's then wife and father-in-law, made loans to the bankrupt to enable him to purchase an automobile for his custom-made furniture

business and a building in which the business was to be conducted. These loans were made in reliance upon the bankrupt's representations that he and his wife would make a good faith effort to strengthen their marriage. After the bankrupt returned to his marital home, and unbenounced to the plaintiffs, from whom the bankrupt requested loans for his business, the bankrupt was then engaged in an extra-marital affair with the wife of his next door neighbor. This conduct was thereafter admitted by the bankrupt in the plaintiff, Ann Milbank's suit for a divorce on the ground of adultery. Hence, the loans were made in reliance upon the bankrupt's expressed representation that he and his then wife would make a good faith effort to strengthen their marriage, when in fact, the bankrupt's conduct was a sham; his extra-marital affair evidenced the bankrupt's false pretenses with respect to a display of marital stability.

Section 17a(2) of the Bankruptcy Act excepts from a discharge provable debts which "are liabilities for obtaining money or property by false pretenses or false representations . . ." 11 U.S.C. § 35a(2). The type of fraud to which § 17a(2) is addressed is that which involves moral turpitude or intentional wrong. 1A *Collier on Bankruptcy* ¶ 17.16.

In the instant cases the claimants allege that in reliance on false representations made to them by the bankrupt they made a number of loans to him. The representations to Mr. Schulman, the bankrupt's ex-father-in-law, were statements that the loans would help to strengthen his marriage and family life by allowing him to purchase a new building for his business which in turn would permit him to hire additional employees thus freeing him from working seven days a week. The representations to Mrs. Milbank, the debtor's ex-wife, were, in effect, that by loaning him money for his needs she would show her faith in him and in their marriage thus strengthening the bond between them. The allegation of false pretenses arises in light of the fact that although the bankrupt stated that the

claimants' loans would strengthen the marriage and indicate to him his wife's faith, he in turn was carrying on an extra-marital affair the entire period in question. In other words, the loans were made in reliance on the bankrupt's representations that since he was working hard to keep the marriage and family together his wife should act similarly and make the loans. However, since the representation was false in that the debtor was not working to keep the marriage together but was having an extra-marital affair, the claimants allege that the loans were made in reliance on false representations and that they should be excepted from discharge pursuant to Section 17a(2).

The burden of proof is on the claimants to show that the debtor intentionally and purposefully attempted to deceive them in obtaining the loans, *In re Taylor*, 514 F.2d 1370 (9th Cir. 1975) and that the loans would not have been made but for the false representations, *1A Collier on Bankruptcy* Sec. 17.16.

It is not essential that the bankrupt's pretenses be expressed in words. A deliberately created falsehood is the same as a spoken falsehood. *In re Nieinhuis*, 1 Bankr.Ct.Dec. 404, 406 [S.D.Mich.1974]. It is hornbook law that the concealment of a material fact may be the equivalent of a false representation and be sufficient upon which to predicate a charge of fraud. 37 *C.J.S. Fraud* § 15. Similarly, the concealment of a fact, which if known, would have influenced a party to refrain from acting, or causing injury, has been held sufficient to constitute fraud. 37 C.J.S. *Fraud*, § 18.

Manifestly, the plaintiffs would not have made the loans in question had they known that the bankrupt was not only not working at keeping his marriage together, but that he was at that time engaged in an extra-marital relationship with his neighbor's wife, for whom he later abandoned his wife and children. The stability of the bankrupt's marriage to the plaintiff, Ann Milbank, and her faith in him were factors expressed by the bankrupt in order to in-

duce the original loan. Accordingly, the stability of the marriage was a condition upon which the plaintiffs relied to their detriment as a result of the bankrupt's false pretenses.

## CONCLUSIONS OF LAW

1. The plaintiff, Ann Milbank, was induced by the bankrupt's false pretenses in August, 1977, to loan him $5000 for his purchase of a Honda automobile.

2. The bankrupt's indebtedness to the plaintiff, Ann Milbank, for the $5000 loan to purchase a Honda automobile was obtained by false pretenses within the meaning of § 17a(2) of the Bankruptcy Act and, therefore, is nondischargeable.

3. The plaintiff, Ann Milbank, was induced by the bankrupt's false pretenses in November, 1977, to loan him $7500 for the purchase of a building in Port Chester, New York.

4. The bankrupt's indebtedness to the plaintiff, Ann Milbank, for the $7500 loan to purchase the Port Chester building was obtained by false pretenses within the meaning of § 17a(2) of the Bankruptcy Act and, therefore, is nondischargeable.

5. The plaintiff, Howard Schulman, was induced by the bankrupt's false pretenses in September and November, 1977, to loan him $10,000 for his purchase of a building in Port Chester, New York.

6. The bankrupt's indebtedness to the plaintiff, Howard Schulman, for the $10,000 loan to purchase the Port Chester building was obtained by false pretenses within the meaning of § 17a(2) of the Bankruptcy Act and, therefore, is nondischargeable.