**In re David George ELLERMAN, Debtor.**

**MaryAnn ELLERMAN, Plaintiff,**

v.

**David George ELLERMAN, Defendant.**

**Bankruptcy No. 90 B 14922.
Adv. No. 91 A 00216.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Jan. 3, 1992.

---

Earl F. Wilcek, Elmhurst, Ill., for debtor/defendant.

Ronald M. Brown, Brown, Shinitzky & Cohen, Chicago, Ill., for plaintiff.

Alexander S. Knopfler, Chicago, Ill., Trustee for Estate.

## MEMORANDUM OPINION

RONALD S. BARLIANT, Bankruptcy Judge.

In February, 1988, David Ellerman, the Debtor, told his wife, MaryAnn, that he had lost his job and was going to Denver to take a new one. The Debtor told MaryAnn that he would not be able to send money at first, but hoped to eventually. While the Debtor was away, MaryAnn supported herself with help from her son. She made the mortgage payments on the Ellerman's home. The Debtor regularly called MaryAnn, purportedly from cities all over the world where his new job had taken him. The Debtor, in fact, never left Illinois. Instead, he had entered into a bigamous marriage with another woman and had begun a new life without telling MaryAnn.

MaryAnn found out about the Debtor's deceit and bigamy around October, 1989. The Debtor instituted divorce proceedings around December, 1989. A divorce settlement was reached in state court requiring the Debtor to make support payments for his daughter. The Debtor filed this Chapter 7 case in August, 1990.

There is only one factual dispute in this case. The Debtor took out a second mortgage (a home equity line of credit) on the Ellermans' home. Douglas Savings & Loan is now seeking to foreclose. MaryAnn alleges that her signatures on the loan documents and mortgage were forged by the Debtor and that she never agreed to a second mortgage on her inter-

est in the property. The Debtor testified that MaryAnn signed the papers in front of him.

MaryAnn is also seeking damages from the Debtor for losses she incurred due to his deceit. MaryAnn asks that these damages be deemed non-dischargeable in the Debtor's bankruptcy case. Although the Debtor's behavior is reprehensible, MaryAnn has not established facts necessary to recover non-dischargeable damages under the United States Bankruptcy Code. Further, this Court need not and should not determine the validity of MaryAnn's signature on the mortgage.

*Discussion*

■ This Court will not make any finding on the issue of whether MaryAnn actually signed the second mortgage document. The bank is the real party in interest against MaryAnn and it is not a party here. The bank is seeking the foreclosure. Even if the Court finds that MaryAnn did not sign the documents, that finding would not control against the bank. The bank will surely litigate the same issue in state court, and the state court will have to make its own findings.

Once the state court resolves this issue, it will no longer be an issue in this Court. If the state court finds that MaryAnn did not sign the document, she will prevail against the bank and will no longer have a complaint against the Debtor regarding the second mortgage. If the bank prevails, she will be entitled to no relief.

■ MaryAnn also seeks damages arising from the Debtor's ongoing scheme to create a false appearance that he was working for the family, while he was actually with another woman. MaryAnn argues that had she known that the Debtor had purported to marry another woman, she would have divorced him immediately, would not have made the mortgage payments for him, and would not have had to support her daughter alone, since the Debtor would have had to make child support payments to her.

The Court has jurisdiction to enter a money judgment for the amount of the plaintiff's claim found to be excepted from

discharge. *Matter of Hallahan*, 936 F.2d 1496, 1507–1508 (7th Cir.1991). The bankruptcy code, 11 U.S.C. § 523(a)(2)(A), excepts from discharge "any debt for money, property, services ... to the extent obtained by false pretenses, a false representation, or actual fraud ...".

■ To succeed on a claim under section 523(a)(2)(A), three elements must be proven: (1) The debtor obtained money (or property) through representations which the debtor knew to be false or made with such reckless disregard for the truth as to constitute willful misrepresentation; (2) the debtor possessed scienter, *i.e.*, intent to deceive; and (3) the false representation was actually relied upon, and such reliance was reasonable. *In re Kimzey*, 761 F.2d 421, 423 (7th Cir.1985). The elements must be proven by a pre-ponderance of the evidence. *Grogan v. Garner*, — U.S. —, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ The Court finds that the Debtor's acts constituted false pretenses. False pretenses are "a series of events, activities or communications which, when considered collectively, create a false and misleading set of circumstances." *In re Dunston*, 117 B.R. 632, 641 (Bkrtcy.D.Colo.1990). The Debtor created an elaborate scheme to trick MaryAnn into believing he was traveling the world, working and being a good husband, while he was actually living with another woman.

To succeed under section 523(a)(2)(A), however, money, property, or services must have been obtained as a result of the reliance on the false pretenses. *In re Cerar*, 97 B.R. 447, 448 (C.D.Ill.1989). The Debtor did not receive any tangible money or property from MaryAnn, and does not retain any benefits of property or money procured by fraudulent means. See 3 Colliers 523.08 at 523–46. MaryAnn's complaint is that, had she known the truth, she would have sought to compel the Debtor to pay money to her (in the form of maintenance and support), not that she ever paid money to him.

Even if the Court were to somehow find that the Debtor received property from MaryAnn, the Court could not find that

MaryAnn proved by a preponderance of the evidence that her reliance on the Debtor's false pretenses caused the Debtor to obtain that property. With regard to the first mortgage, even if MaryAnn had known the truth about the Debtor, she would have been required to make the full mortgage payments or else lose the house. Thus, she has not proven that she only made the payments due to the Debtor's false pretenses.

Further, it is too speculative to determine when and whether MaryAnn would have sought support payments from the Debtor had she known that he was having an affair with another woman. Perhaps they would have reconciled, or perhaps not. Certainly, the Court can not determine when the Debtor would have begun paying support.

This case is distinguishable from *Matter of Milbank,* 1 B.R. 150 (Bkrtcy.S.D.N.Y. 1979). In *Milbank,* the Court held that a loan received by a debtor husband from his wife was a debt nondischargeable in bankruptcy because at the time of the loan, the debtor was having an affair with his next door neighbor. 1 B.R. at 152. In *Milbank,* there had been prior marital problems, and the debtor represented to his wife that "by loaning him money for his needs she would show her faith in him and in their marriage thus strengthening the bond between them." 1 B.R. at 154. Thus, the loan was made in direct reliance upon the debtor's representations that he was striving to improve the marriage, while he was in fact having an affair. 1 B.R. at 154. In this case, MaryAnn has not proven any direct reliance on the Debtor's false pretenses that resulted in the Debtor receiving any of her property.

The remedy for the Debtor's wrongdoing does not lie within the bankruptcy code. Other courts will have to fashion any such remedy. Accordingly, judgment will be entered in favor of the Debtor.

An appropriate Order will be entered.