In re Regina L. BRYSON, Debtor.

BANNER OIL COMPANY, Plaintiff,

v.

Regina L. BRYSON, Defendant.

Bankruptcy No. 94 B 01090.
Adv. No. 94 A 00762.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Oct. 19, 1995.

Jeffrey K. Gutman, Heldrich Gutman & Assoc., Chicago, IL, for Plaintiff.

James A. Chatz, Barry A. Chatz, Charles A. King, Lincolnwood, IL, for Defendant.

### REISSUED MEMORANDUM OPINION

JACK B. SCHMETTERER, Bankruptcy Judge.

This Adversary proceeding relates to the bankruptcy case filed by Regina Bryson ("Bryson" or "Debtor") under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* Plaintiff Banner Oil Company ("Banner") filed this three-count Adversary Complaint against Bryson to bar her discharge and dischargeability of her debt. Banner is in the business of selling fuel oil and gasoline. Bryson was the president of and principal shareholder in K–C Fuel Oil, Incorporated ("K–C"), a customer of Banner's, and had executed a personal guaranty for K–C's debts to Banner.

In Count I, Banner prays that discharge be denied under 11 U.S.C. § 727(a)(5) for Bryson's alleged failure to explain the loss of assets to meet her liabilities. In Count II, Banner alleges that Bryson's debt to Banner

should be declared non-dischargeable under 11 U.S.C. § 523(a)(2)(A) for her alleged use of false pretenses, false representations, and fraud to obtain credit from Banner. In Count III, Banner alleges that her debt should further be declared non-dischargeable under 11 U.S.C. § 523(a)(2)(B) for her alleged use of a false financial statement to obtain credit from Banner.

Bryson has moved for summary judgment as to all counts of the Complaint.[1] Banner has filed a Cross–Motion for Summary Judgment as to Counts I and II of its Complaint. For reasons stated herein and by separate order (1) Bryson's Motion is denied as to Counts I and III; (2) Bryson's Motion is allowed as to Count II; (3) Banner's Motion for Summary Judgment as to Counts I and II is denied; (4) Banner's Additional Response in Opposition to Defendant's Motion for Summary Judgment is stricken; and (5) the case will be set for trial.

Due to many procedural defects by both sides in presenting and opposing these motions, they each lost some ground and the Court was compelled to prepare an extensive analysis in an effort to move the case for-

ward to any possible extent after so much effort by the parties.

## I. BACKGROUND

### A. Undisputed and Contested Facts

Local Bankruptcy Rule 402.M of this Judicial District requires that the party moving for summary judgment file, *inter alia,* a detailed statement ("402.M statement") of material facts as to which the movant contends there is no genuine issue. Local Bankr.R. 402.M.[2] The 402.M statement "shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. *Failure to submit such a statement constitutes grounds for denial of the motion." Id.* (emphasis supplied).

The party opposing the motion is required by Local Rule 402.N to respond ("402.N statement") to the movant's 402.M statement and set forth any material facts which would require denial of summary judgment. Local Bankr.R. 402.N.[3] If the 402.N statement

---

1. Her Amended Motion to Dismiss was stricken by Minute Order on February 2, 1995. Therefore, only Bryson's Amended Motion for Summary Judgment is presently before the Court.

2. **M. Motions for Summary Judgment; Moving Party**

     With each motion for summary judgment filed pursuant to Fed.R.Civ.P. 56 (Fed.R.Bankr.P. 7056), the moving party shall serve and file—
     (1) any affidavits and other materials referred to in Fed.R.Civ.P. 56(e);
     (2) a supporting memorandum of law; and
     (3) a statement of material facts as to which the moving party contends there is no genuine issue and that entitles the moving party to judgment as a matter of law that includes:
     (a) a description of the parties; and
     (b) all facts supporting venue and jurisdiction in this Court.
     The statement of facts referred to in (3) shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a statement constitutes grounds for denial of the motion.
     If additional material facts are submitted by the opposing party pursuant to section N of

this rule, the moving party may submit a concise reply in the form prescribed in section N for a response. All material facts set forth in the statement filed pursuant to section N(3)(b) will be deemed admitted unless controverted by the statement of the moving party.
Local Bankr.R. 402.M.

3. **N. Motions for Summary Judgment; Opposing Party**

     Each party opposing a motion under Fed.R.Civ.P. 56 (Fed.R.Bankr.P. 7056) shall serve and file the following:
     (1) any opposing affidavits and other materials referred to in Fed.R.Civ.P. 56(e);
     (2) a supporting memorandum of law; and
     (3) a concise response to the movant's statement of facts that shall contain:
     (a) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon; and
     (b) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon. All material facts set

fails to deny the material facts set forth in the 402.M statement, those material facts "will be deemed to be admitted." *Id.; see also Schulz v. Serfilco, Ltd.,* 965 F.2d 516, 519 (7th Cir.1992).

Unhappily, the pending cross-motions are rife with procedural defects. When taken as a whole, these defects preclude the entry of summary judgment on Counts I and III on either motion. This Court "should not be required to guess whether the facts asserted by the opposing parties are in direct conflict or scour the record in search of a party's evidence." *Fotsch v. Eli Lilly and Co.,* 1995 WL 238677, at *1 n. 1 (N.D.Ill. Apr. 20, 1995). This Court agrees that:

> Compliance with Local Rules [402.M and 402.N] is not a mere technicality. The court relies greatly upon the information presented in these statements in separating the facts about which there is a genuine dispute from those about which there is none. In failing to comply with the Local Rules of this court both parties have forced the court to expend an undue amount of its scarce time resolving [these] motion[s] for summary judgment.

*American Ins. Co. v. Meyer Steel Drum, Inc.* 1990 WL 92882, at *7 (N.D.Ill. June 27, 1990). District Rules such as these "reflect an attempt to make the parties' respective summary judgment obligations explicit." *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921 (7th Cir.1994). The statements required by Rule 402

> are not merely superfluous abstracts of the evidence. Rather, they are intended to alert the court to precisely what factual questions are in dispute and point the court to specific evidence in the record that supports a party's position on each of these questions. They are, in short, roadmaps, and without them the court should not

have to proceed further, regardless of how readily it might be able to distill the relevant information from the record on its own.

*Id.* at 923 (citations omitted).

### 1. *Bryson's Motion for Summary Judgment*

Local District Rule 12 M [4] "clearly enunciates both what a party [moving for summary judgment] must do and the consequences for failing so to do." *Schulz,* 965 F.2d at 518; *Fobert v. Berkel, Inc.,* 1995 WL 88939, at *2 (N.D.Ill. Mar. 2, 1995). The movant was to file a 402.M statement, which is to contain "references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth" in the purported 402.M statement. Local Bankr.R. 402.M; *American Ins.,* 1990 WL 92882, at *7.

Bryson has failed in important respects to comply with Local Rule 402.M. Her 402.M Statement of Undisputed Material Facts is devoid of any "references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth" in that statement as required by Local Bankruptcy Rule 402.M. This deficiency "constitutes grounds for denial of the motion." *See also Schulz,* 965 F.2d at 517 ("If the moving party does not comply, the motion may be lost ...").

This failure to comply with the Local Rules, although serious and normally grounds for denial of the motion [5], is not significant unless the non-movant disputes some or all of the movant's assertions. That is, if the non-movant's 402.N statement admits each of the assertions contained in a defective 402.M statement, then the defect is

---

forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.

Local Bankr.R. 402.N.

**4.** Rules 12 M and 12 N of the Rules of the United States District Court for the Northern District of Illinois are virtually identical to Local Rules 402.M and 402.N of the Bankruptcy Rules of the United States District Court and the United States Bankruptcy Court for the Northern Dis-

trict of Illinois. Accordingly, precedent interpreting the District Court rules is relevant to the Local Bankruptcy Rules.

**5.** *See American Ins. Co. v. Meyer Steel Drum, Inc.,* 1990 WL 92882, at *7 (N.D.Ill. June 27, 1990) (failure "to make a single reference or citation to any of the deposition testimony, affidavit, or documents ... filed" is grounds to deny the motion for summary judgment under the Local Rules).

to that extent mooted, and the two statements can be treated as a stipulation. However, such defects in the 402.M statement take on considerable significance when the non-movant denies an assertion contained in the defective 402.M statement and that assertion goes to a material fact. Just as the failure to comply with Rule 402.N results in the movant's assertions of undisputed fact being deemed admitted, the converse is true of the failure to comply with Rule 402.M. That is, those assertions contained in a defective 402.M statement that are controverted are deemed disputed, and, if they go to a material fact, preclude entry of summary judgment.

Here, despite Bryson's lack of compliance with Rule 402.M, Banner has admitted certain assertions set forth in Bryson's defective 402.M statement. Thus, those assertions constitute admitted and undisputed facts.

In Banner's 402.N(3)(b) statement of additional undisputed facts, it has omitted supporting references to some factual assertions. However, this procedural defect is not significant here given that Bryson has admitted each of Banner's defective assertions.

Essentially, by their admissions, each party rescued the other from some of their respective procedural errors. However, as will be shown below, there remain many disputed factual issues that preclude summary judgment as to most of the counts.

### a. Undisputed Facts

The undisputed facts with respect to Bryson's Amended Motion for Summary Judgment, as gleaned from Bryson's 402.M statement, Banner's 402.N statement, and Bryson's 402.M reply to Banner's 402.N statement, are as follows:

1. Bryson is an individual residing in Chicago. Bryson's 402.M at ¶ 1.[6]

2. Bryson is the Debtor in Bankruptcy Case No. 94 B 1090 under Chapter 7 of the Bankruptcy Code. Bryson's 402.M at ¶ 2.

3. By its Adversary Complaint, Banner seeks the denial of Bryson's discharge pursu-

ant to 11 U.S.C. § 727(a)(5) and the determination that the debt Bryson owes to Banner is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and (B). Bryson's 402.M at ¶ 4.

4. Banner is a judgment creditor of Bryson. On July 13, 1992, the Circuit Court of Cook County, Illinois entered judgment in favor of Banner and against Bryson in the amount of $163,396.91. The case number is 90 L 7131. Banner still has a claim for $50,000 pending against Bryson. Bryson's 402.M at ¶ 3; Banner's 402.N(3)(b) at ¶ 26.

5. Kathleen Rudis and Timothy Rudis are the only officers, the only directors, and the only shareholders of Banner. Bryson's 402.M at ¶ 5.

6. From January 1989 to the present, Bryson was the president of and a 90% shareholder in K–C Fuel Oil, Incorporated ("K–C"). Bryson's 402.M at ¶ 6; Banner's 402.N(3)(b) at ¶ 1.

7. K–C is an Illinois corporation. Bryson's 402.M at ¶ 6.

8. K–C filed a petition under Chapter 11 of the Bankruptcy Code on January 18, 1991, in the United States Bankruptcy Court for the Northern District of Illinois. The case number was 91 B 1189. Bryson's 402.M at ¶ 7; Banner's 402.N(3)(b) at ¶ 31.

9. K–C filed its Schedules and Statement of Affairs on March 12, 1991. These filings were certified under penalty of perjury by Archie Burton ("Burton") in his capacity as secretary of K–C. Banner's 402.N(3)(b) at ¶ 32.

10. Accounts receivable were not listed in any amount in K–C's Schedules and Statement of Affairs. Banner's 402.N(3)(b) at ¶ 33.

11. K–C's bankruptcy case was converted to Chapter 7 on May 13, 1991. Bryson's 402.M at ¶ 8.

12. Bryson did not list ownership of stock in K–C in bankruptcy schedules filed in her

---

**6.** References are to the location in the statement containing the assertion itself, as opposed to the location in the statement containing the response. By "402.N(3)(b) statement," the Court is referring to those statements of additional undisputed facts that are set forth pursuant to that provision in the Local Rules.

own bankruptcy proceeding. Nor did those schedules show value to any interest in K–C itself, in K–C's assets, or K–C's stock. Banner's 402.N(3)(b) at ¶ 2, 34.

13. On or about June 6, 1989, Banner and K–C began doing business with one another, with Banner selling fuel to K–C. Banner's 402.N(3)(b) at ¶ 5.

14. Banner issued its invoice for goods sold to K–C on the date the fuel was sold.[7] Banner's 402.N(3)(b) at ¶ 3.

15. As president of K–C, Eryson authorized that all checks be tendered for payment upon receipt of the invoice.[8] Banner's 402.-N(3)(b) at ¶ 4.

16. Banner required Bryson and Burton to execute a personal guaranty for the debts to be incurred by K–C and owed to Banner as a condition for Banner continuing to sell goods to K–C on credit. Banner's 402.-N(3)(b) at ¶ 7.

17. Banner received Burton and Bryson's personal guaranty on or about September 30, 1989. Banner's 402.N(3)(b) at ¶ 7.

18. Banner received a K–C financial statement dated September 30, 1989 on or about September 30.[9] Banner's 402.N(3)(b) at ¶ 7.

19. On January 10, 1990, Banner informed K–C that Banner would not sell additional gasoline to K–C unless K–C made payment of the outstanding balance.[10] Banner's 402.N(3)(b) at ¶ 9.

20. Bryson, as president of K–C, signed check number 1574 for $2,224.18 and check number 1580 for $1074.61 on January 22, 1990. Both checks were dated January 22, 1990. Bryson authorized the delivery of these checks to Banner.[11] Banner's 402.-N(3)(b) at ¶ 11.

21. Bryson, as president of K–C, signed check numbers 1601, 1602, 1603, 1605, 1608,

---

7. Without reference to any supporting materials, Bryson asserts in her 402.M reply that there is a dispute on the basis of her lack of knowledge as to the truth or falsity of the assertion. Such a response is improper, insufficient, and inadequate under Rule 402.N. *See South Cent. Bank and Trust Co. v. Citicorp Credit Servs., Inc.*, 863 F.Supp. 635, 643 n. 10 (N.D.Ill.1994) ("This sort of boilerplate language may be adequate for an answer to a complaint, but it is insufficient to controvert a properly supported statement in a" Rule 402.N(3)(b) statement of additional facts). When a movant disagrees with an assertion contained in the non-movant's 402.N(3)(b) statement, the movant's reply must include "specific references to the affidavits, parts of the record, and other supporting materials relied upon...." Local Bankr.R. 402.M; *South Cent. Bank*, 863 F.Supp. at 643 n. 10. *See also Edward E. Gillen Co. v. City of Lake Forest*, 3 F.3d 192, 196–97 (7th Cir.1993) (mere denial of, or disagreement with, the asserted facts is inadequate if made without reference to supporting materials); *Bell, Boyd & Lloyd v. Tapy*, 896 F.2d 1101, 1103 (7th Cir.1990) (Rule 12 requires specificity and documentation; equivocal responses are inadequate). The failure to properly or adequately controvert proper assertions in the 402.N(3)(b) statement of facts results in the assertions being deemed admitted. Local Bankr.R. 402.M (last paragraph); *South Cent. Bank*, 863 F.Supp. at 643 n. 10. *Accord Davis v. Frapolly*, 756 F.Supp. 1065, 1069 n. 4 (N.D.Ill.1991).

8. Although Bryson disputes this assertion, she only refers the Court to a transcript of Bryson's deposition testimony, which does not support her position. The deposition testimony supports

rather than contradicts Banner's assertion. Therefore, this fact is resolved as being undisputed notwithstanding Bryson's purported dispute. The Court is aware that it should not "weigh the evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Notwithstanding this mandate, the Court has an obligation to confirm that materials referenced as supporting the existence of an undisputed fact do actually support that fact. *See, e.g., Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563, 570 n. 4 (7th Cir.1989) (the court examined the referenced supporting materials to determine whether they provided direct evidence or were otherwise supportive).

9. Bryson said she contested this fact, but the supporting materials only dispute the notion that the financial statement was delivered at a September 26, 1989, meeting between Banner and K–C. However, Banner does not assert that the financial statement was delivered at the September 26, 1989 meeting. Rather, Banner asserts that it was delivered on or about September 30, 1989. Bryson's supporting materials do not dispute this date. Therefore, receipt of the K–C financial statement is undisputed.

10. Bryson purports to dispute this fact, but her referenced supporting materials do not support the existence of a dispute as to this assertion.

11. Bryson denies signing the checks on January 22, 1990, yet provides no reference to supporting materials as required by Local Rule 402. Therefore, the unsupported denial will be treated as an admission.

1609, 1610, 1611, and 1612 on January 25, 1990. Each of these checks were dated January 25, 1990, and were authorized by Bryson for delivery to Banner. Check number 1608 was in the amount of $2512.66.[12] Banner's 402.N(3)(b) at ¶ 12.

22. Each of the checks issued to Banner by K–C on January 10, 1990, January 22, 1990, and January 25, 1990, were returned to Banner unpaid due to insufficient funds ("NSF"). Banner's 402.N(3)(b) at ¶ 14.

23. The checks that were returned NSF totalled $37,398.91. Banner's 402.N(3)(b) at ¶ 15.

24. Bryson knew when she signed the checks in question that the account upon which those checks were drawn did not have sufficient funds to pay the checks issued to Banner. Banner's 402.N(3)(b) at ¶ 17.

25. On or about January 31, 1990, Banner learned that all of the checks issued by Bryson on behalf of K–C on January 10, 22, and 25, 1990 were not paid and returned due to insufficient funds.[13] Banner's 402.N(3)(b) at ¶ 19.

26. Banner demanded immediate replacement of the checks that were returned due to insufficient funds.[14] Banner's 402.N(3)(b) at ¶ 19.

27. On various dates through February 28, 1990, Bryson replaced the checks issued on January 10, 22, and 25, 1990, with new checks. Banner's 402.N(3)(b) at ¶ 22.

28. On February 19, 1990, Bryson signed check number 1711 in the amount of $4192.40. Check number 1711 was dated February 19, 1990, and was issued to replace check number 1603 and check number 1605, which were returned NSF.[15] Banner's 402.-N(3)(b) at ¶ 23.

29. Check number 1711 was returned unpaid to Banner due to insufficient funds. Banner's 402.N(3)(b) at ¶ 23.

30. Bryson has not paid or replaced check numbers 1711, 1603, or 1605. Banner's 402.N(3)(b) at ¶ 24.

31. Bryson has no knowledge whether accounts receivable of K–C as of March 31, 1990, were ever collected. Banner's 402.-N(3)(b) at ¶ 30.

### b. Disputed Facts

■ Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, made applicable to bankruptcy proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, the Court may set forth the material facts that are in good faith controverted.[16] Rule 56(d) deals with partial grants of summary judgment, and the bankruptcy or district court may issue an order, similar to a pretrial order, listing the facts that are not in dis-

**12.** Bryson denies signing the checks on January 25, 1990, but provides no reference to supporting materials as required by Local Rules 402.M and 402.N. As such, the unsupported denial will be treated as an admission. It would have been a simple matter for her to have filed an affidavit denying her signature or the date of signature and delivery, but she did not.

**13.** Without reference to any supporting materials, Bryson has disputed this point on the basis that Bryson has no knowledge as to the truth or falsity of the assertion. This is an insufficient response and will be deemed an admission. *See* n. 7 *supra.*

**14.** Without reference to any supporting materials, Bryson has disputed this point on the basis that Bryson has no knowledge as to the truth or falsity of the assertion. This is an insufficient response and will be deemed an admission. *See* n. 7 *supra.*

**15.** Bryson denies signing the check on February 19, 1990, but provides no reference to supporting materials as required by Local Rules 402.M and 402.N. As such, the unsupported denial will be treated as an admission.

**16.** Rule 56(d) provides that:

... If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

pute. Such an order is binding as to those facts. *Occidental Fire and Casualty Co. of North Carolina v. Continental Bank N.A.*, 918 F.2d 1312, 1320 (7th Cir.1990). *See also Capitol Records, Inc. v. Progress Record Distrib., Inc.,* 106 F.R.D. 25 (N.D.Ill.1985); *SFM Corp. v. Sundstrand Corp.,* 102 F.R.D. 555 (N.D.Ill.1984); *In re Anderson,* 159 B.R. 830 (Bankr.N.D.Ill.1993) (Schmetterer, J.).

The disputed or contested facts concerning Bryson's motion for summary judgment are as follows:

1. Whether Banner has any information or evidence establishing that the checks referenced in Count II of the Complaint were delivered or caused to be delivered to Banner by Bryson. Bryson's 402.M at ¶ 10.

2. Whether any officer or director of Banner took any step to verify information contained in the financial statement allegedly delivered to Banner by Bryson prior to Banner's extension of credit to K–C.[17] Bryson's 402.M at ¶ 11.

3. Whether in K–C's bankruptcy case any actions were brought by a creditor or the trustee against Bryson or any other officer or shareholder of K–C regarding alleged improper disposition of some or all of K–C's assets.[18] Bryson's 402.M at ¶ 9.

4. Whether any officer or director of Banner took any step to investigate the credit worthiness of either K–C or Bryson before extending credit to K–C. Bryson's 402.M at ¶ 12.

5. Whether Banner has any information or evidence establishing that Bryson prepared the financial statement referenced in Count III of the Complaint. Bryson's 402.M at ¶ 13.

6. Whether Banner has any information or evidence establishing that Bryson delivered, or caused to be delivered, the financial statement referenced in Count III of the Complaint to Banner. Bryson's 402.M at ¶ 14.

7. Whether Banner regularly sold fuel to K–C from June 1989 through September 30, 1989. Banner's 402.N(3)(b) at ¶ 6.

8. Whether on or about September 30, 1989, Banner required K–C to provide a financial statement as a condition to further sales to K–C on credit. Banner's 402.N(3)(b) at ¶ 7.[19]

9. Whether Bryson signed check number 1541, whether that check was for $10,683.34, whether Bryson signed it on January 10, 1990, and whether Bryson authorized delivery on January 10, 1990.[20] Banner's 402.-N(3)(b) at ¶ 10.

10. Whether Banner sold additional oil to K–C on credit between January 10, 1990, and January 31, 1990, in reliance on the receipt of the checks from K–C and whether that amount sold was $95,819.79. Banner's 402.-N(3)(b) at ¶ 13.

17. Although Banner disputes this point, it references an affidavit merely by name, without any pinpoint references by page or paragraph number. This alone would be ground to treat the dispute as unsupported and the fact as undisputed. *See Waldridge,* 24 F.3d at 922 ("courts are not obliged in our adversary system to scour the record looking for factual disputes"). However, even when the Court does counsel's job (i.e. by culling the referenced document for the appropriate supporting paragraph), the Court has been unable to find anything in the affidavit to support the assertion that there is a dispute on this point. However, because Bryson failed to reference any supporting materials whatsoever, this fact will nonetheless be treated as a disputed fact.

18. Without citing any supporting materials, Banner has responded that it has no knowledge as to this assertion, that it is not supported by any evidence, and that it is irrelevant. Banner has violated Rule 402 in two respects. First, Banner's failure to cite supporting materials violates Rule 402.N(3)(a) and is grounds for deeming the assertion admitted. Second, the response itself is inadequate and improper, regardless of the lack of reference to supporting materials. *See* n. 7 *supra*. Normally, a response in a 402.N statement which claims a lack of knowledge will be treated as an admission. *South Cent. Bank,* 863 F.Supp. at 643 n. 10. However, because Bryson has also violated Rule 402 by failing to reference any supporting materials, the Court will treat the assertion as a disputed fact.

19. Banner failed to support this assertion with any referenced materials in violation of Rule 402.N(3)(b). Bryson's denial ensures that Banner's assertion will not be taken as undisputed.

20. As Bryson has pointed out, Banner has failed to submit a copy of check number 1541. Therefore, there is no support for this assertion of fact and it will be treated as disputed.

11. Whether Bryson deceived Banner and used false pretenses to obtain additional credit by submitting 14 checks that were returned unpaid due to insufficient funds.[21] Banner's 402.N(3)(b) at ¶ 16.

12. Whether Banner continued to sell and supply gasoline on and after January 10, 1990 to K–C on credit as a direct result of Banner's receipt of checks totalling $37,-398.91. Banner's 402.N(3)(b) at ¶ 18.

13. Whether Bryson deceived Banner by submitting 14 checks to Banner that were returned due to insufficient funds.[22] Banner's 402.N(3)(b) at ¶ 20.

14. Whether Bryson issued K–C's financial statement dated March 31, 1990. Banner's 402.N(3)(b) at ¶ 27–28.

15. Whether Bryson kept records to verify if payments were made on K–C's accounts receivable. Banner's 402.N(3)(b) at ¶ 30.

16. Whether as a general matter delivery of K–C's checks to Banner was authorized only when funds were received by K–C sufficient to cover the checks to Banner. Bryson's 402.M reply at ¶ 11–12.

17. Whether the exception to that general policy occurred when K–C would deliver the checks to Banner while informing Banner that K–C did not at that moment have sufficient funds. Bryson's 402.M reply at ¶ 11–12.

### c. Banner's Improper Filings

It is well-understood that a court may only render a summary judgment on the basis of a set of undisputed facts that are sufficient under the applicable law. However, problems often arise in establishing those facts to be relied upon by the court. "The facts must be established through one of the vehicles designed to ensure reliability and veracity—depositions, answers to interrogatories, admissions[,] and affidavits." *Martz v. Union* *Labor Life Ins. Co.*, 757 F.2d 135, 138 (7th Cir.1985). *See also* Fed.R.Civ.P. 56(e).

Rule 56(e) governs affidavits filed in a motion for summary judgment. Pursuant to Rule 56(e),

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

Fed.R.Civ.P. 56(e). Thus, Rule 56(e) requires that an affidavit: "(1) must be made on personal knowledge of the affiant; (2) set forth facts that would be admissible in evidence; and (3) show affirmatively that the affiant is competent to testify to the matters stated therein." *Pfeil v. Rogers*, 757 F.2d 850, 860 (7th Cir.1985), *cert. denied*, 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986). The Seventh Circuit has emphasized the personal knowledge requirement:

> [W]itnesses who are not expert witnesses ... are permitted to testify only from their personal knowledge. Testimony about matters outside their personal knowledge is not admissible, and if not admissible at trial neither is it admissible in an affidavit used to support or resist the grant of summary judgment ... It is true that "personal knowledge" includes inferences—all knowledge is inferential—and therefore opinions. But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience.

*Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 659 (7th Cir.1991) (*en banc*) (citations omitted).[23]

21. Rule 56(e) of the Federal Rules of Civil Procedure and Local Rule 402 contemplate statements of material *fact*. Statements that embody conclusions, especially legal conclusions, are outside the scope of summary judgment. Such statements will not be treated as undisputed *facts*. See *Maksym v. Loesch*, 937 F.2d 1237, 1243 (7th Cir.1991); *Davis v. City of Chicago*, 841 F.2d 186, 189 (7th Cir.1988).

22. See n. 21 *supra*.

23. *See also Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 337 (7th Cir.1991) (a party's "speculation is not a sufficient defense to a summary judgment motion"); *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir.1989) (an affidavit used for summary judgment purposes cannot be based on rumor or conjecture).

■ Furthermore, mere conclusory statements do not satisfy the standards of Rule 56(e). *Davis v. City of Chicago,* 841 F.2d 186, 189 (7th Cir.1988); *Toro Co. v. Krouse, Kern & Co., Inc.,* 827 F.2d 155, 163 (7th Cir.1987); *Ashwell & Co. v. Transamerica Ins. Co.,* 407 F.2d 762, 766 (7th Cir.1969). The same is true of legal conclusions, as those are outside the scope of Rule 402. *See Maksym v. Loesch,* 937 F.2d 1237, 1243 (7th Cir.1991). Finally, an affidavit verified "upon information and belief" is insufficient for summary judgment purposes. *Price v. Rochford,* 947 F.2d 829, 832 (7th Cir.1991); *Toro,* 827 F.2d at 162–63 & n. 3. If an affidavit is insufficient under Rule 56(e), it must not be considered on summary judgment. *Friedel v. City of Madison,* 832 F.2d 965, 970 (7th Cir.1987) (citations omitted).

■ Although not expressly referred to in Rule 56, a party may submit evidence other than that listed in Rule 56 in support of its position on summary judgment. However, when a party seeks to offer evidence through other exhibits, they must be identified by affidavit or otherwise made admissible in evidence. *Martz,* 757 F.2d at 138. Furthermore, materials submitted for summary judgment must be otherwise admissible. *Whitted v. General Motors Corp.,* 58 F.3d 1200, 1204 (7th Cir.1995). That is, Rule 56 does not authorize the use of unsworn statements or unverified reports unless such other materials are either (1) identified by affidavit as being authentic or (2) otherwise admissible. *Martz,* 757 F.2d at 138. Each exhibit must either be a certified copy or be accompanied by a sworn statement as to the authenticity of the document. If a party fails to do so with respect to some or all of the supporting documents, the Court may strike in those documents and may deny the motion for failure to provide supporting materials.

Banner has submitted fifteen "Exhibits in Response to Defendant's Amended Motion for Summary Judgment." Most of these submissions are procedurally defective in that they lack the certification, verification, or authentication contemplated by Rule 56. However, these defects are only significant when their authenticity or accuracy is questioned or objected to by the opposing party. Although Bryson has not filed a formal motion to strike the exhibits complained of, Bryson has objected in her 402.M reply.[24] Specifically, Bryson questions the accuracy of Exhibits E and H to Banner's 402.N statement. Exhibit E purports to be a "Banner Oil Statement of Invoices and Account." As this is not an affidavit, deposition, answer to an interrogatory, or an admission, Exhibit E must be authenticated or certified before it will be considered as supporting material. Exhibit E lacks such authentication or certification and is thus insufficient under Rule 56(e). Accordingly, Exhibit E will not be considered in reviewing Bryson's Amended Motion for Summary Judgment and will be stricken.[25]

Exhibit H purports to be a "Financial Statement of K.C. Fuel dated March 31, 1990." Exhibit H suffers from the same defect as does Exhibit E. For the reasons stated with respect to Exhibit E, Exhibit H will also be stricken.[26]

■ In addition to its 402.N statement and its Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, Banner has filed an Additional Response In

---

**24.** Generally, "where a party fails to move to strike a defective affidavit [or other defective *submission*] or particular portions thereof, the party has waived any objections based on [the] defects and the court *may* consider the affidavit [or other defective submissions]. Even if any objections are waived, a court is obviously not *required* to consider affidavits [or other submissions] insufficient under Rule 56(e)." *Friedel,* 832 F.2d at 971 n. 4 (citations omitted).

**25.** As a result, paragraphs 8, 21, and 25 of Banner's 402.N(3)(b) statement of additional facts are in violation of Local Rule 402.N(3)(b) due to the lack of sufficient reference to supporting materials. The assertions contained in those paragraphs cannot be taken as undisputed. Although Banner refers to the Affidavit of Timothy Rudis as support, the affidavit refers to Exhibit E as well. The reference to the affidavit does not cure Banner's failure to authenticate or certify Exhibit E, as Rudis fails to authenticate Exhibit E in his affidavit.

**26.** Paragraph 29 of Banner's 402.N(3)(b) statement of additional facts is also in violation of Rule 402.N(3)(b) and the assertions contained therein will not be treated as undisputed. *See* n. 25 *supra.*

Opposition to Defendant's Motion for Summary Judgment, wherein Banner submits "Additional Undisputed Facts," an additional memorandum of law, and additional affidavits. This filing is not contemplated by the Local Rules and, as such, will be stricken. Local Rule 402 contemplates an initial filing by the movant which is to contain the motion, the 402.M statement of undisputed facts, a memorandum of law, and all affidavits and other supporting materials. Local Bankr.R. 402.M. The non-movant is then afforded the opportunity to respond with the 402.N statement of undisputed facts, a responsive memorandum of law, and any opposing affidavits or other supporting materials. Local Bankr.R. 402.N. In its 402.N statement, the non-movant is to respond to each numbered paragraph contained in the movant's 402.M statement and is permitted to set forth any "additional facts that require the denial of summary judgment" with specific "references to the affidavits, parts of the record, and other supporting materials relied upon." Local Bankr.R. 402.N(3)(b). If the non-movant files a statement of additional undisputed facts, the movant is permitted to reply to those additional material facts. Local Bankr.R. 402.M (last paragraph). Nowhere in the Local Rules is there any mention of a further filing, response, or reply by the non-movant. The Local Rules' silence on this point, however, does not necessarily mean that such filings are automatically invalid. Rather, as such filings are not expressly provided for in the Local Rules, they may only be filed, and will only be accepted, with leave of Court. Banner has neither sought nor been granted leave of Court to file the "Additional Undisputed Facts," the additional memorandum of law, or the additional affidavits. Accordingly, because this filing is unauthorized, it will not be considered and instead will be stricken.

### 2. *Banner's Motion for Summary Judgment*

#### a. **Undisputed Facts**

The undisputed facts with respect to Banner's motion for summary judgment as

gleaned from Banner's 402.M statement, Bryson's 402.N statement, and Banner's 402.M reply to Bryson's 402.N statement are as follows:

1. Prior to 1989, Bryson served as the president of K–C, served as a director of K–C, and owned 100% of K–C's stock. Banner's 402.M at ¶¶ 1–3.

2. In 1989, Bryson sold 10% of her shares in K–C to her husband, Archie Burton. Banner's 402.M at ¶¶ 1–3.

3. In 1989, Burton became the secretary and treasurer of K–C. Bryson remained as the president, a director, and a 90% shareholder. Banner's 402.M at ¶ 4.

4. K–C filed a petition under Chapter 11 of the Bankruptcy Code on January 18, 1991. The case was designated as case number 91 B 01189. Banner's 402.M at ¶ 34.

5. K–C filed its Schedules and Statement of Affairs on March 12, 1991. These filings were certified under penalty of perjury by Archie Burton ("Burton") in his capacity as secretary of K–C. Banner's 402.M at ¶ 35.

6. Accounts receivable are not listed in any amount in K–C's Schedules and Statement of Affairs. Banner's 402.M at ¶ 36.

7. K–C's Schedules and Statement of Affairs list K–C as having inventory worth $2,000.00. Banner's 402.M at ¶ 36.

8. Bryson's own bankruptcy schedules show no value to her interest in K–C itself, its assets, or its stock. Banner's 402.M at ¶ 37.

9. Banner required Bryson and Burton to execute a personal guaranty for the debts to be incurred by K–C and owed to Banner as a condition for Banner continuing to sell goods to K–C on credit. Banner's 402.M at ¶ 5.

10. Bryson and Burton delivered the requested personal guaranty to Banner.[27] Banner's 402.M at ¶ 7.

27. Bryson purports to dispute this fact, but her referenced supporting materials do not dispute this fact.

11. Banner issued its invoice for goods sold to K–C on the date the fuel was sold.[28] Banner's 402.M at ¶ 9.

12. On January 10, 1990, Banner informed K–C that Banner would not sell additional gasoline to K–C unless payment of the outstanding balance was made by K–C.[29] Banner's 402.M at ¶ 12.

13. Bryson, as president of K–C, signed check number 1574 for $2,224.18 and check number 1580 for $1074.61 on January 22, 1990. Both checks were dated January 22, 1990. Bryson authorized the delivery of these checks to Banner.[30] Banner's 402.M at ¶ 14.

14. Bryson, as president of K–C, signed check numbers 1601, 1602, 1603, 1605, 1608, 1609, 1610, 1611, and 1612 on January 25, 1990. Each of these checks were dated January 25, 1990 and were authorized by Bryson for delivery to Banner. Check number 1608 was in the amount of $2512.66.[31] Banner's 402.M at ¶ 15.

15. Each of the checks issued by K–C to Banner on January 10, 1990, January 22, 1990, and January 25, 1990 were returned to Banner unpaid due to insufficient funds ("NSF"). Banner's 402.M at ¶ 17.

16. The checks that were returned NSF totalled $37,398.91. Banner's 402.M at ¶ 18.

17. Bryson knew when she signed the checks in question that the account upon which those checks were drawn did not have sufficient funds to pay the checks issued to Banner. Banner's 402.M at ¶ 20.

18. On or about January 31, 1990, Banner learned that all of the checks issued by Bryson on behalf of K–C on January 10, 22, and 25, 1990, were not paid and returned due to insufficient funds.[32] Banner's 402.M at ¶ 22.

19. On or about January 31, 1990, Banner demanded immediate replacement of the checks that had been returned due to insufficient funds.[33] Banner's 402.M at ¶ 22.

20. On various dates through February 28, 1990, Bryson replaced the checks issued on January 10, 22, and 25, 1990, with new checks. Banner's 402.M at ¶ 25.

21. On February 19, 1990, Bryson signed check number 1711 in the amount of $4192.40. Check number 1711 was dated February 19, 1990 and was issued to replace check numbers 1603 and 1605, which were returned NSF.[34] Banner's 402.M at ¶ 26.

22. Check number 1711 was returned unpaid to Banner due to insufficient funds. Banner's 402.M at ¶ 26.

23. Bryson has not paid or replaced check numbers 1711, 1603, or 1605. Banner's 402.M at ¶ 27.

24. Bryson defaulted in her obligation to Banner under the guaranty. Banner's 402.M at ¶ 28.

**28.** Without reference to any supporting materials, Bryson asserts in her 402.N statement that there is a dispute on the basis of her lack of knowledge as to the truth or falsity of the assertion. Such a response is improper, insufficient, and inadequate under Rule 402. *See* n. 7 *supra.*

**29.** Bryson purports to dispute this fact, but her referenced supporting materials do not dispute this fact.

**30.** Bryson denies signing the checks on January 22, 1990, but provides no reference to supporting materials as required by Local Rule 402.N. As such, the unsupported denial will be treated as an admission.

**31.** Bryson denies signing the checks on January 25, 1990, but provides no reference to supporting materials as required by Local Rule 402.N. As such, the unsupported denial will be treated as an admission.

**32.** Without reference to any supporting materials, Bryson asserts in her 402.N statement that there is a dispute on the basis of her lack of knowledge as to the truth or falsity of the assertion. Such a response is improper, insufficient, and inadequate under Rule 402.N. *See* n. 7 *supra.*

**33.** Without reference to any supporting materials, Bryson asserts in her 402.N statement that there is a dispute on the basis of her lack of knowledge as to the truth or falsity of the assertion. Such a response is improper, insufficient, and inadequate under Rule 402.N. *See* n. 7 *supra.*

**34.** Bryson denies signing the check on February 19, 1990, but provides no reference to supporting materials as required by Local Rule 402.N. As such, the unsupported denial will be treated as an admission.

25. On July 13, 1992, the Circuit Court of Cook County, Illinois, entered judgment in favor of Banner and against Bryson in the amount of $163,396.91. The case number is 90 L 7131. Banner still has a claim for $50,000 pending against Bryson. Banner's 402.M at ¶ 29.

26. Bryson has no knowledge whether accounts receivable of K–C as of March 31, 1990, were ever collected. Banner's 402.M at ¶ 33.

Bryson has submitted what appears to be a 402.N(3)(b) statement of additional facts that are asserted to require denial of Banner's motion for summary judgment. Paragraphs A, C, D, and E will be stricken due to the absence of referenced supporting materials.

Under Local Bankruptcy Rule 402, "[i]f additional material facts are submitted by the opposing party pursuant to section N of this rule, the moving party may submit a concise reply in the form prescribed in section N for a response. All material facts set forth in the statement filed pursuant to section N(3)(b) will be deemed admitted unless controverted by the statement of the moving party." Local Bankr.R. 402.M. Bryson, at least to the extent not stricken, has filed a statement of additional facts pursuant to Rule 402.N(3)(b). Banner's failure to reply results in those non-stricken additional facts submitted by Bryson being deemed admitted. *See id.* Those uncontested facts are as follows:

27. Although Bryson did sign a number of checks and authorize their delivery to Banner, Bryson generally only authorized delivery when funds were received to cover the checks. The exception to this practice occurred when K–C informed Banner that sufficient funds were not yet in K–C's account to cover the amounts of the checks. Bryson's 402.N(3)(b) at ¶ B.

28. K–C kept records regarding the collection of accounts receivable. Bryson's 402.-N(3)(b) at ¶ F.

29. Bryson no longer has any records of K–C. Bryson's 402.N(3)(b) at ¶ F.

In paragraph G of her statement of additional facts, Bryson attempts to incorporate by broad reference the submitted affidavits of Bryson and of Burton. The proper procedure would be to list and specify each supporting paragraph of the affidavit in the 402.N statement. That was not done.

Banner has filed what purports to be a statement of "Additional Undisputed Facts." The Local Rules indicate that a movant has two choices after the non-movant has filed the 402.N response: (1) do nothing, in which case the non-movant's statement of additional facts will be deemed admitted; or (2) reply to the non-movant's statement of additional facts. Local Bankr.R. 402.N. A reply is just that: an opportunity to respond to the newly raised issues contained in the non-movant's filings. It is not, however, an opportunity to assert some additional undisputed facts. The Rule does not provide for such an opportunity, at least not without leave of court. Moreover, the "Additional Undisputed Facts" submitted by Banner lack references to supporting materials and are stricken on that basis as well. *See* Local Bankr.R. 402.M.

**b. Disputed Facts**

Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, the following material facts are in good faith controverted:

(1) Whether Banner required K–C to provide a financial statement as a condition to further sales to K–C on credit (Banner's 402.M at ¶ 5) and whether Exhibit C to the motion was delivered by Banner or Bryson to K–C in September of 1989. Bryson Affidavit ¶¶ 5, 6, 7.

(2) Whether Banner believed the September 30, 1989 financial statement was true and correct. Banner's 402.M at ¶ 8.

(3) Whether Banner relied on the September 30, 1989 financial statement in selling gasoline to K–C on credit. Banner's 402.M at ¶ 8.

(4) Whether the balance owed Banner by K–C through January 9, 1990 was $123,-042.62. Banner's 402.M at ¶ 11.

(5) Whether as president of K–C, Bryson authorized that all checks be tendered for

payment upon receipt of the invoice.[35] Banner's 402.M at ¶ 10.

(6) Whether Bryson signed check number 1541, whether that check was for $10,683.34, whether Bryson signed it on January 10, 1990, and whether Bryson authorized delivery on January 10, 1990.[36] Banner's 402.M at ¶ 13.

(7) Whether Banner relied on the receipt of the checks that were eventually returned unpaid due to insufficient funds. Banner's 402.M at ¶¶ 16, 24.

(8) Whether Bryson deceived Banner and used false pretenses to obtain additional credit by submitting 14 checks that were returned unpaid due to insufficient funds.[37] Banner's 402.M at ¶ 19.

(9) Whether Banner continued to sell and supply gasoline on and after January 10, 1990 to K–C on credit as a direct result of Banner's receipt of checks totalling $37,398.91. Banner's 402.M at ¶ 21.

(10) Whether banner sold additional oil to K–C from January 10, 1990 to January 31, 1990 worth $95,819.79. Banner's 402.M at ¶ 24.

(11) Whether Bryson deceived Banner by submitting 14 checks to Banner that were returned due to insufficient funds.[38] Banner's 402.M at ¶ 23.

(12) Whether Banner sold gasoline to K–C on credit in the amount of $213,396.91 between December 15, 1989 and January 30, 1990. Banner's 402.M at ¶ 28.

(13) Whether K–C failed to make payment for the fuel purchased from Banner on credit. Banner's 402.M at ¶ 28.

(14) Whether Bryson issued K–C's financial statement dated March 31, 1990. Banner's 402.M at ¶¶ 30–31; Bryson Aff. at ¶ 8.

(15) Whether K–C's March 31, 1990 financial statement lists shareholder equity owned by Bryson in the amount of $104,373.33, accounts receivable due K–C in the amount of $188,763.04, and assets of $357,036.23. Banner's 402.M at ¶ 32.

(16) Whether Bryson kept records to verify if payments were made on K–C's accounts receivable. Banner's 402.M at ¶ 33.

## II. DISCUSSION

### A. Jurisdiction

This matter is before the Court pursuant to 28 U.S.C. § 157 and Local General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. Subject matter jurisdiction lies under 28 U.S.C. § 1334(b). Venue lies properly under 28 U.S.C. § 1409. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (J), and (O).

### B. Standards for Summary Judgment

■ Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). *See generally Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106

---

**35.** Bryson disputes this fact, but her referenced supporting materials, which are affidavits executed by Bryson and Burton, contradict her deposition testimony referenced by Banner. The deposition testimony supports the fact, while the affidavits only suggest a dispute. However, because assertions of fact are viewed in the light most favorable to the non-movant, this will be treated as a disputed fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

**36.** As Bryson has pointed out, Banner has failed to submit a copy of check number 1541. Therefore, there is no support for this assertion of fact and it will be treated as disputed.

**37.** This point is more in the nature of a legal conclusion than a material fact. As such, *it is* outside the scope of Local Rule 402, which is limited to material facts. *See Maksym,* 937 F.2d at 1243. In any event, there is a genuine dispute on this assertion. *See also* n. 21 *supra.*

**38.** *See* n. 21 *supra.*

S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). A court may render summary judgment upon the whole case or only a portion thereof. Fed.R.Civ.P. 56(e). Partial summary judgment is only available, however, where it disposes of at least one count of a complaint in its entirety. *Commonwealth Ins. Co. v. O. Henry Tent & Awning Co.*, 266 F.2d 200, 201 (7th Cir.1959); *Quintana v. Byrd*, 669 F.Supp. 849, 850 (N.D.Ill.1987).

The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist and that judgment should be granted in its favor as a matter of law. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53. The movant must inform the court of the basis for its motion and identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* There is no genuine issue for trial only if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. *Matsushita*, 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

Inferences drawn from the underlying facts will be viewed in a light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14; *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1355–56. However, the existence of a material factual dispute is sufficient to prevent summary judgment only if the disputed fact is determinative of the outcome under appli-

cable law. *Anderson*, 477 U.S. at 24, 106 S.Ct. at 2381.

### C. Count I: 11 U.S.C. § 727(a)(5)

Section 727(a)(5) of the Bankruptcy Code provides that "[t]he court shall grant the debtor a discharge, unless ... the debtor has failed to explain satisfactorily ... any loss of assets or deficiency of assets to meet the debtor's liabilities...." 11 U.S.C. § 727(a)(5).[39] "Section 727(a)(5) is broadly drawn and clearly gives a court broad power to decline to grant a discharge in bankruptcy where the debtor does not adequately explain a shortage, loss, or disappearance of assets." *First Federated Life Ins. Co. v. Martin (In re Martin)*, 698 F.2d 883, 886 (7th Cir.1983). There are two phases or stages of proof with respect to § 727(a)(5). First, the party objecting to discharge has the burden of proving that debtor at one time "owned substantial and identifiable assets that are no longer available to his creditors." *BancFlorida v. DePasquale*, 1993 WL 410152, at *4 (N.D.Ill. Oct. 14, 1993).[40] The objecting party must meet its burden by a preponderance of the evidence. *Community Bank of Homewood–Flossmoor v. Bailey (In re Bailey)*, 145 B.R. 919, 925 (Bankr.N.D.Ill.1992) (Ginsberg, J.). Second, if the party objecting to the discharge meets its burden, then the debtor "is obligated to provide a satisfactory explanation for the loss." *BancFlorida*, 1993 WL 410152 at *4.[41] Because the question of whether an explanation is satisfactory is one of fact, that determination is left to the Court's discretion. *See Id.*[42] However, the debtor's explanation "must consist of more than 'a vague, indefinite, and uncorroborated hodgepodge of financial transactions.'" *Id.* (quoting *Baum v. Earl Millikin, Inc. (In re*

---

**39.** Section 727(a)(5) provides:

(a) The court shall grant the debtor a discharge, unless—

\* \* \* \* \* \*

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities....

11 U.S.C. § 727(a)(5).

**40.** *See Illinois ex rel. Ryan v. Volpert (In re Volpert)*, 175 B.R. 247, 264 (Bankr.N.D.Ill.1994);

*Volpert v. Volpert (In re Volpert)*, 1994 WL 605894, at *9 (Bankr.N.D.Ill., Oct. 26, 1994); *Community Bank of Homewood–Flossmoor v. Bailey (In re Bailey)*, 145 B.R. 919, 925 (Bankr. N.D.Ill.1992).

**41.** *See* Note to *supra*.

**42.** *See also Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 619 (11th Cir.1984); *Illinois ex rel. Ryan v. Volpert (In re Volpert)*, 175 B.R. 247, 264 (Bankr.N.D.Ill.1994); *Volpert v. Volpert (In re Volpert)*, 1994 WL 605894, at *9 (Bankr.N.D.Ill. Oct. 26, 1994).

*Baum),* 359 F.2d 811, 814 (7th Cir.1966)); *Bailey,* 145 B.R. at 925; *In re Potter,* 88 B.R. 843, 849 (Bankr.N.D.Ill.1988). *See also Chalik,* 748 F.2d at 619 ("Vague and indefinite explanations of losses that are based upon estimates uncorroborated by documentation are unsatisfactory"). That is, "[t]o be satisfactory, the explanation must demonstrate the debtor has exhibited good faith in conducting his affairs and explaining the loss of assets." *Bay State Milling Co. v. Martin (In re Martin),* 141 B.R. 986, 999 (Bankr. N.D.Ill.1992) (citations omitted); *Potter,* 88 B.R. at 849. Although the debtor's explanation need not be comprehensive, the

> explanation must meet two criteria to be called "satisfactory." First, after hearing the explanation, the fact finder must be satisfied. In other words, the explanation must be good enough to eliminate the need for the Court to speculate as to what happened to all the assets.
>
> \*  \*  \*  \*  \*  \*
>
> Second, the explanation must be supported by some documentation. This is not to say a debtor must produce receipts for every minor expenditure, but he must at least produce sufficient documentation so as to free the Court from the need to speculate about the veracity of the debtor's explanations.

*Bay State Milling Co. v. Martin (In re Martin),* 145 B.R. 933, 950 (Bankr.N.D.Ill.1992) (citations omitted), *appeal dismissed,* 151 B.R. 154 (N.D.Ill.1993).

▇▇ The first question, then, is whether Banner has established that Bryson at one time owned substantial and identifiable assets that are no longer available to his creditors. Banner's theory is that a financial statement of K–C dated March 31, 1990 indicates that Bryson had shareholder equity in K–C worth $104,373.33, but that Bryson's bankruptcy schedules filed in 1994 indicate that there is no value to her interest in K–C,

its assets, or its stock. Banner's *Complaint for Objection to Discharge,* Count I at ¶ 10–11. In its Opposition to Bryson's Amended Motion for Summary Judgment, as well as in its own cross Motion for Summary Judgment, Banner attempts to establish the necessary facts as being undisputed by reference to its Exhibit H.[43] Banner's 402.N(3)(b) at ¶ 29; Banner's 402.M at ¶ 32.

Exhibit H purports to be the financial statement in question. However, as discussed above, Bryson has questioned the accuracy and authenticity of Exhibit H. The Court has already found that Exhibit H has not been properly authenticated and has stricken Exhibit H. As a result, the assertions in ¶ 29 of Banner's 402.N(3)(b) statement of additional facts lack support and will be treated as in dispute. Banner has not asserted any other undisputed facts to support its theory. Accordingly, Banner has failed to meet it its burden of demonstrating that Bryson at one time had substantial assets that are now unavailable to pay creditors. This fact is material because it is determinative of the outcome under § 727(a)(5). *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. The absence of Exhibit H from consideration, coupled with Bryson's position, precludes the entry of summary judgment because there is a genuine issue of material fact.

On the other side, summary judgment is denied to Bryson because she has failed to meet her burden of establishing an explanation for the alleged loss or dissipation of her the value of K–C stock between 1990 and 1994. Bryson has failed to establish undisputed facts that would support such an explanation.

Accordingly, because there are genuine issues of material fact regarding Count I of Banner's Complaint, both Bryson's Amended Motion for Summary Judgment as well as

---

**43.** Banner asserts that Bryson's failure to deny paragraph 10 of the Complaint results in the assertions contained therein being deemed admitted. Bryson's original Answer did not deny the assertions contained in paragraph 10 of the Complaint. However, Bryson's original failure to deny the assertions contained in paragraph 10 of the Complaint was the result of a typographi-

cal error, which was corrected in her Second Amended Answer, wherein she denied the allegations in paragraph 10. Bryson sought and was granted leave to file her Second Amended Answer. *See* Order of April 5, 1995. Therefore, Bryson has disputed, rather than admitted, the assertions contained in paragraph 10 of the Complaint.

Bryson's Motion for Summary Judgment will be denied as to Count I.

### D. Count II: 11 U.S.C. § 523(a)(2)(A)

In Count II, Banner claims that Bryson's debt to Banner should be declared non-dischargeable to the extent that Banner extended credit to K–C on the basis of Bryson's false pretenses, false representations, or actual fraud. According to Banner, Bryson's misconduct occurred when she knowingly issued checks on behalf of K–C that she knew could not be covered. Banner alleges that it relied on the receipt of these checks in further extending credit to K–C. The checks were returned unpaid due to insufficient funds.

■■■■■ "The burden is on the objecting creditor to prove exceptions to discharge." *Goldberg Secs., Inc. v. Scarlata (In re Scarlata)*, 979 F.2d 521, 524 (7th Cir.1992) (citation omitted); *Schaffer v. Dempster (In re Dempster)*, 182 B.R. 790, 799 (Bankr.N.D.Ill. 1995) (Schmetterer, J.) (*citing Martin*, 698 F.2d at 887). The party objecting to discharge must establish an exception to discharge by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991). It is well-established that " 'exceptions to discharge are to be construed strictly against a creditor and liberally in favor of the debtor.' " *Scarlata*, 979 F.2d at 524 (*quoting In re Zarzynski*, 771 F.2d 304, 306 (7th Cir. 1985)). *Accord Meyer v. Rigdon*, 36 F.3d 1375, 1385 (7th Cir.1994); *Dempster*, 182 B.R. at 799.

■■■■ Section 523(a)(2)(A) of the Bankruptcy Code directs that a debtor should not be discharged from any debt obtained by false pretenses, a false representation, or actual fraud other than statements respecting the debtor's or an insider's financial condition, which are governed by § 523(a)(2)(B).[44] To succeed on its claim that Bryson's debt is non-dischargeable under § 523(a)(2)(A), Banner must prove the following elements by a preponderance of the evidence: (1) Bryson, acting as president of K–C, obtained the extension or renewal of credit from or by Banner through representations which she either knew to be false or made with such reckless disregard for the truth as to constitute willful misrepresentation; (2) Bryson possessed the requisite scienter, i.e. she actually intended to deceive Banner; and (3) Banner *actually* relied on Bryson's representations to its detriment. *Mayer v. Spanel Int'l, Ltd. (In re Mayer)*, 51 F.3d 670, 673 (7th Cir.1995), cert. denied, —— U.S. ——, 116 S.Ct. 563, —— L.Ed.2d —— (1995); *see also First Nat'l Bank of Red Bud v. Kimzey (In re Kimzey)*, 761 F.2d 421, 423 (7th Cir.1985).

■■■ Recently, the elements necessary to sustain an objection to discharge under § 523(a)(2)(A) have been reviewed in this Circuit. *See Mayer*, 51 F.3d at 674–76. The court in *Mayer*, analyzed *Kimzey* and questioned the uniform application of a formula heavily laden with requirements of intent. *Mayer*, 51 F.3d at 674. Intent is an integral component of fraud. Yet "fraud" is only one of three types of misconduct mentioned in § 523(a)(2)(A). "False pretenses" and "false representations" are also listed in § 523(a)(2)(A) as grounds for denial of discharge under that section. The court in *Mayer* then noted that, in contrast to "fraud," "false pretenses" and "false representations" do not require a finding of intent. *Id.* Given the disparity in the elements necessary to prove the three types of misconduct, the court questioned the wisdom of using a test designed for "fraud" as the test for "false pretenses" and "false representations." *Id.* Despite this analysis, *Mayer* nevertheless declined to delineate a separate

---

**44.** Section 523(a)(2)(A) of the Bankruptcy Code provides:

 (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

    \*    \*    \*    \*    \*    \*

 (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

 (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;....

11 U.S.C. § 523(a)(2)(A).

test for "false pretenses" and "false representations." Rather, the court indicated that it did not wish to create a conflict with the majority of the other courts of appeals. *Id.* at 674–75. Therefore, intent remains an element under § 523(a)(2)(A) whether the claim is for "fraud," "false pretenses," or "false representation." [45]

Although *Mayer* stopped short of changing authority on the issue of intent, the court was not so hesitant when it came to the issue of reliance. As originally set forth by the court in *Kimzey*, the creditor's reliance had to be both actual and reasonable. *Kimzey*, 761 F.2d at 423. Courts, including this Court, had consistently followed that standard. *See, e.g., In re Maurice*, 21 F.3d 767, 774 (7th Cir.1994); *Scarlata*, 979 F.2d at 525; *119th & Halsted Currency Exchange v. Blake–Ware (In re Blake–Ware)*, 155 B.R. 476, 477 (Bankr.N.D.Ill.1993) (Ginsberg, J.); *Trizna & Lepri v. Malcolm (In re Malcolm)*, 145 B.R. 259, 262 and n. 1 (Bankr.N.D.Ill.1992) (Wedoff, J.); *Federal Trade Comm'n v. Austin (In re Austin)*, 138 B.R. 898, 903 (Bankr. N.D.Ill.1992) (Coar, J.); *Ellerman v. Ellerman (In re Ellerman)*, 135 B.R. 308, 310 (Bankr.N.D.Ill.1992) (Barliant, J.); *Illinois ex rel. Burris v. Tapper (In re Tapper)*, 123 B.R. 594, 600 (Bankr.N.D.Ill.1991) (Schmetterer, J.); *First State Bank of Alsip v. Iaquinta (In re Iaquinta)*, 98 B.R. 919, 923 (Bankr.N.D.Ill.1989) (Squires, J.).

However, *Mayer* determined that reasonable reliance is not an element under § 523(a)(2)(A).[46] *Mayer*, 51 F.3d at 676. Rather, the reliance need only be actual: " '[t]he creditor need establish only its reliance in fact, although its claim to reliance cannot be so unreasonable as to defeat a finding of reliance in fact.' " *Mayer*, 51 F.3d at 676 (quoting and adopting that definition as set forth in *Northern Trust Co. v. Garman (In re Garman)*, 625 F.2d 755, 761 (7th Cir.1980), *republished at* 643 F.2d 1252, *cert. denied*, 450 U.S. 910, 101 S.Ct. 1347, 67 L.Ed.2d 333 (1981)). The type of reliance required under § 523(a)(2)(A) does not "require proof that the creditor conducted an investigation reasonably designed to discover whether the would-be borrower is telling the truth." *Dempster*, 182 B.R. at 800 n. 2. Therefore, the objecting party need only demonstrate actual reliance for purposes of § 523(a)(2)(A), but need not separately establish that its reliance was reasonable or that it undertook a reasonable investigation.

45. In contrast, the Fifth Circuit recently made a distinction between (1) "actual fraud" and (2) "false pretenses" and "false representations." *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1292–93 (5th Cir.1995).

When defining the elements of nondischargeability under § 523(a)(2)(A), we have distinguished between actual fraud on the one hand, and false pretenses and representations on the other. *See Bank of La. v. Bercier (In re Bercier)*, 934 F.2d 689, 692 (5th Cir.1991); *see also* 3 Collier on Bankruptcy ¶ 523.08[4] & [5] (discussing in separate sections "false pretenses or false representations" and "actual fraud"). In order for a debtor's representation to be a "false representation or false pretense" under § 523(a)(2), it "must have been: (1) [a] knowing and fraudulent falsehood [ ], (2) describing past or current facts, (3) that [was] relied upon by the other party." *In re Allison*, 960 F.2d at 483; *see also In re Bercier*, 934 F.2d at 692 ("[T]o be a false representation or false pretense under § 523(a)(2), the 'false representations and false pretenses [must] encompass statements that falsely purport to depict current or past facts.' " *(quoting Keeling v. Roeder (In re Roeder)*, 61 B.R. 179, 181 (Bankr. W.D.Ky.1986))).

*Id.* (footnote omitted).

The court in *RecoverEdge* further noted that, unlike the Fifth Circuit, "[o]ther circuits have applied a uniform standard resembling [the Fifth Circuit's] 'actual fraud' standard to all debts falling under § 523(a)(2)(A)." *Id.* at 1293 n. 18. The court cited the Seventh Circuit's opinion in *In re Maurice*, 21 F.3d 767, 774 (7th Cir.1994), as an example of one of those "[o]ther circuits." *Id.* However, *Maurice* merely set forth the elements under § 523(a)(2)(A) in the context of an allegation of actual fraud. 21 F.3d at 774. *Maurice* did not address the issue of whether the elements are different for "false pretenses." Thus, although *RecoverEdge* is correct that the Seventh Circuit applied the "actual fraud" standard, *Maurice* cannot be read to stand for the proposition that the Seventh Circuit applies the same test for "false pretenses" as it does for "actual fraud." However, even though *Maurice* does not stand for that proposition, that does appear to be the case based on the analysis contained in *Mayer*.

46. This view has been adopted by at least two other courts of appeals. *See RecoverEdge*, 44 F.3d at 1293 n. 17 *(citing In re Allison*, 960 F.2d 481, 484–85 (5th Cir.1992)); *Thul v. Ophaug (In re Ophaug)*, 827 F.2d 340, 343 (8th Cir.1987).

Banner has asserted that Bryson obtained additional credit from Banner through false pretenses by issuing fourteen checks to Banner, each of which was returned unpaid due to insufficient funds, even though Bryson knew there were not sufficient funds to pay those checks. Banner alleges that it had threatened it would refuse to sell additional fuel on credit to K–C unless K–C made payment of the outstanding balance. Banner further alleges that Bryson responded to Banner's threat by issuing the NSF checks in order to induce Banner to continue to, or further, extend credit to K–C. Banner claims that it actually and reasonably relied on "false pretenses," assertedly implied by issuance of those checks, in extending additional credit to K–C. No express statements by Bryson were demonstrated in support of this Count.

What constitutes "false pretenses" in the context of § 523(a)(2)(A) has been consistently defined as "implied misrepresentations or conduct intended to create and foster a false impression." *Peterson v. Bozzano (In re Bozzano)*, 173 B.R. 990, 993 (Bankr.M.D.N.C.)[47] A thorough analysis of "false pretenses" as used in § 523(a)(2)(A) was set forth in *Evans v. Dunston (In re Dunston)*, 117 B.R. 632, 641 (Bankr.D.Colo. 1990), *aff'd in relevant part*, 146 B.R. 269 (D.Colo.1992):

> This Court construes "false pretense" in the context of Section 523(a)(2)(A) to mean, generally, a series of events, activities or communications which, when considered collectively, create a false and misleading set of circumstances, or false and misleading understanding of a transaction, in which a creditor is wrongfully induced by the debtor to transfer property or extend credit to the debtor. "False pretense" may, but does not necessarily, include a written or express false representation. It

can consist of silence when there is a duty to speak.

A false pretense is usually, but not always, the product of multiple events, acts or representations undertaken by a debtor which purposely create a contrived and misleading understanding of a transaction that, in turn, wrongfully induces the creditor to extend credit to the debtor. A "false pretense" is established or fostered willfully, knowingly and by design; it is not the result of inadvertence.

"False pretense" is more like a con game than a stickup. It is more like being dealt from the bottom of the deck than being mugged. A false pretense is generally employed by stealth, implication, and misdirection, while fraud and false representations are typically implemented more by fabrication, explication and diversion.

*Dunston*, 117 B.R. at 641. In contrast to a "false pretense," a "false representation" is an *express* misrepresentation. *Lewis*, 164 B.R. at 591; *Krenowsky v. Haining (In re Haining)*, 119 B.R. 460, 463–64 (Bankr. D.Del.1990); *Fitzgerald*, 109 B.R. at 898.

As discussed above, the elements Banner must prove under § 523(a)(2)(A) are the same whether the allegation is of "fraud" or of "false pretenses." The first element requires Banner to prove by a preponderance of the evidence that Bryson made representations to Banner by issuing the checks that were returned unpaid due to insufficient funds when she knew that there were not sufficient funds at the time of issuance. However, Banner is unable to satisfy this element as a matter of law.

Although there appears to be a split of authority on the question of whether the issuance of a check constitutes an implied representation that there are sufficient funds in the account to cover the amount of the check,[48] the Seventh Circuit has concluded

---

47. *Accord, Hile v. Lewis (In re Lewis)*, 164 B.R. 588, 591 (Bankr.N.D.Ohio 1994); *Germain Lincoln Mercury of Columbus, Inc. v. Begun (In re Begun)*, 136 B.R. 490, 494 (Bankr.S.D.Ohio 1992).

48. *See Bobilya Chrysler, Plymouth, Dodge, Inc. v. Gross (In re Gross)*, 175 B.R. 277, 284–85 (Bankr. N.D.Ind.1994) (noting the split, collecting cases,

and following *Scarlata* ); *Roebuck Auto Sales, Inc. v. Mahinske (In re Mahinske)*, 155 B.R. 547, 550–51 (Bankr.N.D.Ala.1992) (noting the split, collecting cases, and relying on *Williams v. United States*, 458 U.S. 279, 284, 102 S.Ct. 3088, 3091, 73 L.Ed.2d 767 (1982)); *Microtech Int'l, Inc. v. Horwitz (In re Horwitz)*, 100 B.R. 395, 398–99 (Bankr.N.D.Ill.1989) (Katz, J.) (noting

that knowingly passing a bad check is not a false pretense or false representation in the context of § 523(a)(2)(A). *Scarlata,* 979 F.2d at 525. In *Scarlata,* the creditor had alleged that the debtor had made a false pretense by tendering a check for which he did not have sufficient funds. *Scarlata,* 979 F.2d at 524–25. This Court had initially denied the debtor's discharge, partially resting on that basis. *See* 112 B.R. 279, 287 (Bankr.N.D.Ill.1990). The District Court reversed that finding. *See* 127 B.R. 1004, 1009 (N.D.Ill.1991). The Seventh Circuit, relying on *Williams v. United States,* 458 U.S. 279, 284, 102 S.Ct. 3088, 3091, 73 L.Ed.2d 767 (1982), affirmed the District Court on this point. *See* 979 F.2d at 525. The Seventh Circuit in *Scarlata* agreed with the Supreme Court in *Williams* and held that a bad check is not a "false pretense" as a matter of law. The *Scarlata* court applied the reasoning of the *Williams* court, which held that passing a bad check is not a "false statement" within the meaning of 18 U.S.C. § 1014, a criminal statute.[49]

▬ Therefore, as a matter of law, Bryson's knowing issuance of the insufficient funds checks cannot support the denial of Bryson's discharge under § 523(a)(2)(A). That is so because, as a matter of law, in the absence of a positive statement regarding the sufficiency of the bank account, Bryson's issuance of the checks to Banner does not constitute a false pretense or false representation within the meaning of § 523(a)(2)(A). *See Scarlata,* 979 F.2d at 525; *Horwitz,* 100 B.R. at 398–99.

▬ Bryson has also argued that, even if the checks constituted a representation as to the solvency of K–C or as to the amount of money in K–C's account, Banner improperly relied on § 523(a)(2)(A) because that section, by its terms, does not apply to false pretenses, false representations, or actual fraud respecting an insider's or the debtor's own financial condition. That is so. *See Piekarczyk v. Nantz (In re Nantz),* 44 B.R. 543, 545 (Bankr.N.D.Ill.1984) ("Statements of financial condition are explicitly excepted from the operation of § 523(a)(2)(A)"). The District Judge in *Scarlata* ruled that "any implied representation stemming from the check related to [the debtor's] own financial condition ..." 127 B.R. at 1010. Therefore, it is improper to apply § 523(a)(2)(A) to false pretenses regarding the debtor's own or an insider's financial condition. *Id.* at 1009–10. While the Seventh Circuit did not expressly pass on this ground for reversal, it is appropriate to follow the District Judge's reasoning on this issue. Accordingly, Banner's claim under § 523(a)(2)(A) is also barred as a matter of law for this additional reason.

For reasons stated above, Bryson's Amended Motion for Summary Judgment as to Count II of Banner's Adversary Complaint will be allowed and Banner's Cross–Motion for Summary Judgment as to Count II of Banner's Adversary Complaint will be denied.[50]

**E.** *Count III: 11 U.S.C. § 523(a)(2)(B)* [51]

In Count III of its Complaint, Banner seeks to deny Bryson's discharge pursuant to 11 U.S.C. § 523(a)(2)(B) [52] for allegedly issu-

the split, collecting cases, and relying on *Williams* ).

**49.** *See also In re Hunt,* 30 B.R. 425, 438 (M.D.Tenn.1983) ("creditor cannot rely solely on the existence of an NSF check ... to establish a misrepresentation for § 523(a)(2) purposes"); *In re Horwitz,* 100 B.R. 395, 398 [ (Bankr.N.D.Ill. 1989)] (acknowledging split on this issue, but commenting that contrary cases have not noted the holding in *Williams* ).

**50.** Because Banner's claim under § 523(a)(2)(A) is barred as a matter of law on two separate grounds, no analysis of the second and third elements under § 523(a)(2)(A) is necessary.

**51.** Only Bryson has moved for summary judgment with respect to Count III.

**52.** Section 523(a)(2)(B) of the Bankruptcy Code provides:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(2) for money, property services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

\* \* \* \* \* \*

(B) use of a statement in writing—
(i) that is materially false;
(ii) respecting the debtor's or an insider's financial condition;
(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

ing a materially false financial statement with the intent to deceive Banner. Banner claims that Bryson, as president of K–C, issued a false financial statement on behalf of K–C in order to induce Banner to extend further credit to K–C when Banner threatened to cut off future credit sales to K–C. The financial statement was allegedly issued on or about September 30, 1989, in response to Banner's demand. Banner claims that the financial statement was materially false in that it lacked an accurate list of all of K–C's debts and asserts that it relied on this financial statement to its detriment by selling additional fuel to K–C on credit. Finally, Banner claims that Bryson knew the financial statement was inaccurate when she issued it and that she issued it with the intent to deceive Banner.

■ The party objecting to discharge has the burden of establishing the elements under § 523(a)(2)(B). *Selfreliance Fed. Credit Union v. Harasymiw (In re Harasymiw)*, 895 F.2d 1170, 1172 (7th Cir.1990). Each element must be proven by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991). It is well-established that " 'exceptions to discharge are to be construed strictly against a creditor and liberally in favor of the debtor.' " *Scarlata*, 979 F.2d at 524 (*quoting In re Zarzynski*, 771 F.2d 304, 306 (7th Cir.1985)). *Accord Meyer v. Rigdon*, 36 F.3d 1375, 1385 (7th Cir.1994). The requirements of nondischargeability under 11 U.S.C. § 523(a)(2)(B) comprise six elements: The debtor (1) must make (2) with intent to deceive (3) a materially false (4) statement in writing (5) respecting the debtor's or an insider's financial condition (6) on which the creditor reasonably relied. *Harasymiw*, 895 F.2d at 1172. *See also In re Sheridan*, 57 F.3d 627, 633 (7th Cir.1995).

■ Banner must first establish that Bryson made or issued the financial statement in question. Because there is a genuine issue of material fact as to whether Bryson issued the financial statement in issue, the Court may not enter summary judgment on Count III. *See Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. This fact is material, as it is a necessary element under the statute, and thus determinative of the outcome. *Id.*

■ Assuming *arguendo* that Bryson did issue the financial statement, Banner must next establish that Bryson did so with the intent to deceive. It is well-established that "a party can prove an intent to deceive through direct evidence." Alternatively, it was recently held in the Seventh Circuit that wrongful intent may "logically be inferred from a false representation which the debtor knows or should know will induce another" to extend credit. *Sheridan*, 57 F.3d at 633. Whether a debtor had the requisite intent to deceive can be established by proving actual knowledge of the falsity of the financial statement. *Westbank v. Grossman (In re Grossman)*, 174 B.R. 972, 984 (Bankr.N.D.Ill.1994) (Schmetterer, J.) (*citing Community Bank of Homewood–Flossmoor v. Bailey (In re Bailey)*, 145 B.R. 919, 931 (Bankr.N.D.Ill.1992) (Ginsberg, J.)). The debtor's intent to deceive may also be demonstrated by proving reckless indifference to, or reckless disregard for, the accuracy of the information in the financial statement. *Id.* Where a debtor " 'knowingly or recklessly makes a false representation which the [debtor] knows or should know, will induce another to make a loan [or extend credit], an intent to deceive may logically be inferred.' " *Garman*, 625 F.2d at 764 (*quoting Carini v. Matera*, 592 F.2d 378, 380 (7th Cir.1979), *cert. denied*, 450 U.S. 910, 101 S.Ct. 1347, 67 L.Ed.2d 333 (1981)). *Accord Grossman*, 174 B.R. at 984 (citation omitted). The debtor's intent to deceive may also be inferred from the surrounding circumstances. *Grossman*, 174 B.R. at 984. However, the creditor has the burden of providing evidence from which such an inference can be drawn. *Id.* (citation omitted). Bryson asserts that Banner has failed to produce any direct evidence of Bryson's alleged intent to deceive and has failed to produce any evidence from which the court could infer such intent. While Bryson may not be completely correct on this point,

(iv) that the debtor caused to be made or published with the intent to deceive; . . . .

11 U.S.C. § 523(a)(2)(B).

there is nevertheless a genuine issue of material fact on this point, which precludes entry of summary judgment on Count III.

Banner must also demonstrate by a preponderance of the evidence that the financial statement was materially false. Courts have recognized two different tests for determining whether a statement is materially false under § 523(a)(2)(B). Under the first, known as the "substantial untruth" test, a statement is materially false for purposes of § 523(a)(2)(B) if it "paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit." *Jordan v. Southeast Nat'l Bank (In re Jordan)*, 927 F.2d 221, 224 (5th Cir.1991) (citation omitted); *accord Bailey*, 145 B.R. at 930 & n. 7. The second test is known as the "but for" test and requires a creditor to prove that, but for the material misrepresentation, no credit would have been extended. *Grossman*, 174 B.R. at 984. With respect to the issue of whether a financial statement is materially false, the Seventh Circuit has not determined whether the "substantial untruth" test or the "but for" test must be applied. *See Harasymiw*, 895 F.2d at 1172 (noting the dispute regarding which test is appropriate, but not resolving it). Although the court in *Harasymiw* noted cases defining materiality under § 523(a)(2)(B) as "an important or substantial untruth," the court also referred to the "but for" test as a "recurring guidepost." *Harasymiw*, 895 F.2d at 1172 (*citing Bogstad*, 779 F.2d at 375). "This tends to show some support for the 'but for' test in this Circuit, and for purposes of this decision, that standard will be presumed to be the applicable standard." *Grossman*, 174 B.R. at 984. *But cf. Bailey*, 145 B.R. at 930 n. 7 (noting the lack of resolution, but selecting the "substantial untruth" test). The parties will be expected to argue at trial which test should be followed and why.

Finally, Banner must prove by a preponderance of the evidence that it reasonably relied to its detriment on the financial statement. This is the element the parties contest the most. Bryson asserts that any reliance by Banner on the financial statement was not reasonable because Banner failed to take any steps to verify or investigate the credit worthiness of K–C itself or of Bryson as a guarantor. Bryson further asserts that Banner has failed to establish any facts that directly support a finding of reasonableness or that would support an inference thereof. Banner responds that it had no duty to verify the financial statement due to its ongoing relationship with K–C and that Banner had the right to rely on the financial statement without taking any further steps.

In contrast to § 523(a)(2)(A), under § 523(a)(2)(B) Banner must establish both actual as well as reasonable reliance. "[B]ecause direct proof of actual reliance is difficult, actual reliance may be proven by circumstantial evidence of reliance." *Kreps v. Kreps*, 700 F.2d 372, 375 (7th Cir. (1983)). Actual reliance on a representation may be shown by evidence that the creditor would not have extended the credit if it had known the truth. *Lesman v. Mitchell (In re Mitchell)*, 70 B.R. 524, 527 (Bankr.N.D.Ill.1987) (Schmetterer, J.). However, there is a genuine issue of material fact on this point, as the parties dispute whether or not Banner required the financial statement as a condition of the extension of additional credit. If Banner did so, that might give the requisite circumstantial evidence from which the Court could infer Banner's actual reliance on the financial statement in extending additional credit. However, because that material fact is genuinely in issue, that is yet another reason why the Court may not grant summary judgment on Count III.

Because determination of whether a creditor's reliance was reasonable depends on the particular facts and circumstances of a given case, that determination should be made on a case-by-case basis. *Harasymiw*, 895 F.2d at 1173; *In re Bonnett*, 895 F.2d 1155, 1157 (7th Cir.1989); *Bogstad*, 779 F.2d at 372 n. 4. The standard for measuring the reasonableness of a creditor's reliance is an objective test that requires the Court to measure the creditor's actual conduct against: (a) the creditor's standard practices in evaluating credit worthiness; (b) the standards or customs of the creditor's industry in evaluating credit worthiness; and (c) the surround-

ing circumstances existing at the time of the debtor's application for credit. *Grossman,* 174 B.R. at 984 (citations omitted).

■ Because the Court is not to "second guess a creditor's decision to make a loan [or extend other credit] or to set loan policy for the creditor," the Court must be careful to balance the creditor's right to rely on some financial information with the duty to investigate other financial information. *Garman,* 625 F.2d at 761; *accord Harasymiw,* 895 F.2d at 1174; *Kreps,* 700 F.2d at 375. On the one hand, "the requirement of 'reasonable' reliance added to § 523(a)(2)(B)(iii) by the 1978 Code surely does not mean that a creditor may 'assume the position of an ostrich with its head in the sand and ignore facts which were readily available to it.'" *Bogstad,* 779 F.2d at 372 n. 4 (citations omitted). In other words, under certain circumstances, a creditor has a duty to verify the assets and their values as set forth on a debtor's financial statement. For example, where the creditor is aware of the debtor's reputation for untruthfulness or propensity to deceive, the creditor would have a duty to investigate. *Bogstad,* 779 F.2d at 372 n. 4. Under those circumstances, any reliance on the debtor's financial statement would be unreasonable absent an independent investigation. *Id.* In addition, "a creditor's failure to follow its own established lending [or credit] procedures can preclude reasonable reliance on the debtor's financial information." *Harasymiw,* 895 F.2d at 1174 (*citing Mitchell*), 70 B.R. at 527. "To hold that a creditor is obligated to verify information contained in a financial statement is simply to say that under the circumstances of the particular case, ordinary prudence would require verification." *Federal Deposit Ins. Co. v. Smigel (In re Smigel),* 90 B.R. 935, 938 (Bankr. N.D.Ill.1988) (Coar, J.).

■ On the other hand, "although a creditor is not entitled to rely upon an obviously false representation of the debtor, this does not require him or her to view each representation with incredulity requiring verification." *Garman,* 625 F.2d at 763. For example, if the parties have a long-standing relationship, then the creditor may not be required to conduct an investigation or verification of a debtor's financial statement. *Harasymiw,* 895 F.2d at 1173; *Garman,* 625 F.2d at 762–63. "But where the debtor and creditor are strangers … there is no controlling case in this circuit which states, as a matter of law, that a creditor is not obligated to verify." *Smigel,* 90 B.R. at 938.

In this case, that "prior, on-going relationship" was only about three-and-one-half months old when the financial statement allegedly issued. It is doubtful whether this constitutes the type of "long-standing relationship" contemplated by this exception to the duty to verify assets in a debtor's financial statement. *See Garman,* 625 F.2d at 762–63. Moreover, even if it does, there is a genuine issue of material fact as to whether Banner did attempt to verify the assets or conducted an investigation. As such, summary judgment is again inappropriate on Count III.

Because there are genuine issues of material fact as to several of the elements necessary under § 523(a)(2)(B), Bryson's Amended Motion for Summary Judgment as to Count III must be denied.

### III. *CONCLUSION*

For the reasons set forth above, Bryson's Amended Motion for Summary Judgment will be denied as to Counts I and III; her Amended Motion for Summary Judgment will be allowed as to Count II; Banner's Motion for Summary Judgment as to Counts I and II will be denied; and Banner's Additional Response in Opposition to Defendant's Motion for Summary Judgment is stricken. A trial will be held on Counts I and III pursuant to a pre-trial order to be entered.